IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

No. 18-2220

JORGE ALCAREZ, individually and on behalf of all others similarly situated,
Plaintiff - Appellee
v.
AKORN, INC., et al.,
Defendants - Appellees
APPEAL OF: THEODORE H. FRANK, Intervenor

No. 18-2221

SEAN HARRIS, On behalf of himself and all others similarly situated,
Plaintiff - Appellee
v.
AKORN, INC., et al.,
Defendants - Appellees
APPEAL OF: THEODORE H. FRANK, Intervenor

No. 18-2225

ROBERT BERG, Individually and on behalf of all others similarly situated,
Plaintiff - Appellee
v.
AKORN, INC., et al.,
Defendants - Appellees
APPEAL OF: THEODORE H. FRANK, Intervenor

On Appeal from the United States District Court for the Northern District of Illinois,
Nos. 1:17-CV-05017; 1:17-CV-05021, and 1:17-CV-05016, Trial Judge Thomas M. Durkin

Reply Brief of Appellant Theodore H. Frank

COMPETITIVE ENTERPRISE INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
Anna St. John
Melissa Ann Holyoak
1310 L Street NW, 7th Floor
Washington, D.C. 20005
(917) 327-2392

*Attorneys for Appellant Theodore H. Frank*

# Table of Contents

Table of Contents ..................................................................................................... ii

Table of Authorities ............................................................................................... iv

Introduction ............................................................................................................... 1

Argument ..................................................................................................................... 2

**I.**      Appellees misrepresent the record and standard of review in an attempt to portray Frank's prayer for injunctive relief as "moot." ................................ 2

**II.**     Frank met the requirements for intervention under Rule 24 ....................... 5

     A.     Frank intervenes to vindicate his own interests and remedy the breach of fiduciary duty by appellees' counsel. ............................................ 6

     B.     Frank's interest is entirely impaired if he cannot intervene against appellees and their counsel. ................................................................ 8

     C.     Frank was not required to intervene before his interests were ripe. ............ 9

**III.**    Appellees' Article III jurisdiction and standing arguments are not grounded in fact or law. ................................................................................................. 11

     A.     Frank possesses standing to pursue claims against appellees' counsel. ...... 11

     B.     The district court can properly exercise jurisdiction over Frank's claims. ................................................................................................... 13

**IV.**    Frank repeatedly reserved his right to appeal the district court's denial. ............. 14

**V.**      Frank seeks injunctive relief that is neither speculative nor beyond the permissible scope of intervention. .......................................................... 15

     A.     The district court has authority to grant Frank's requested relief. .............. 15

     B.     Appellees' challenge to Frank's ability to obtain equitable relief fails on the merits and is procedurally improper ........................................... 18

     C.     Frank's request for injunctive relief is based on the record set forth in his proposed complaint detailing the "racket" counsel have developed post-*Walgreen*. .......................................................................... 19

     D.     There is no conflict between the relief Frank seeks and the Rules of Professional Conduct ...................................................................... 21

**VI.** Appellees' other arguments provide no support for the legality of their racket, which is unauthorized by the Exchange Act and contravenes *Walgreen*...................................................................................................22

    A.   *Walgreen* did not import all idiosyncrasies of Delaware corporation law into Seventh Circuit controversies involving alleged Exchange Act violations by a Louisiana corporation...........................................22

    B.   The PSLRA was intended to curtail lawyer-driven rackets that harm shareholders...................................................................................24

Conclusion ............................................................................................... 26

Certificate of Compliance with Fed. R. App. 32(a)(7)(C) .................... 27

Proof of Service........................................................................................ 28

# Table of Authorities

Cases

*In re Adv. Mammography Sys., Inc. Shareholders Litig.,*
  1996 WL 633409 (Del. Ch. Oct. 30, 1996) ....................................................................23

*Boyer v. BNSF Ry. Co.,*
  832 F.3d 699 (7th Cir. 2016) .........................................................................................15

*Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.,*
  532 U.S. 598 (2001) ........................................................................................................22

*Byer Clinic & Chiropractic, Ltd. v. Kapraun,*
  48 N.E.3d 244 (Ill. Ct. App. 2016) ................................................................................11

*Camasta v. Jos. A. Bank Clothiers, Inc.,*
  761 F.3d 732 (7th Cir. 2014) .........................................................................................20

*City of Pontiac Gen. Employees Ret. Sys. v. Lockheed Martin Corp.,*
  844 F. Supp. 2d 498 (S.D.N.Y. 2012) ............................................................................24

*Cohen v. Beneficial Indus. Loan Corp.,*
  337 U.S. 541 (1949) ........................................................................................................11

*Cook v. City of Chicago,*
  192 F.3d 693 (7th Cir. 1999) ...........................................................................................3

*Culver v. City of Milwaukee,*
  277 F.3d 908 (7th Cir. 2002) .........................................................................................11

*Flying J, Inc. v. Van Hollen,*
  578 F.3d 569 (7th Cir. 2009) .........................................................................................10

*Gibraltar Mausoleum Corp. v. Cedar Park Cemetery Assoc.,*
  1993 WL 135454 (N.D. Ill. Apr. 29, 1993) ...................................................................17

*Gunn v. Minton,*
  568 U.S. 251 (2013) ........................................................................................................11

*Hendry v. Pelland,*
    73 F.3d 397 (D.C. Cir. 1996) ........................................................................11

*ITT Commercial Finance Corp. v. Unlimited Auto., Inc.,*
    814 F. Supp. 664, 669 (N.D. Ill. 1992) ..........................................................13

*Julianites Against Shakedown Tactics v. TEJJR,*
    2006 WL 8089629 (S.D. Cal. Dec. 29, 2006).................................................16

*Julianites Against Shakedown Tactics v. TEJJR,*
    2007 WL 184716 (S.D. Cal. Jan. 5, 2007).....................................................16

*Lake Investors Dev. Group v. Egidi Dev. Group,*
    715 F.2d 1256 (7th Cir. 1983) .......................................................................18

*Laurens v. Volvo Cars of North America,*
    2016 WL 5944896 (N.D. Ill. Oct. 13, 2017) .................................................20

*Masters v. Wilhelmina,*
    473 F.3d 423 (2nd Cir. 2007) ........................................................................24

*McCaskill v. SCI Mgt. Corp.,*
    298 F.3d 677 (7th Cir. 2002) ...........................................................................3

*Meridian Homes Corp. v. Nicholas W. Prassas & Co.,*
    683 F.2d 201 (7th Cir. 1982) .......................................................................7, 8

*Mills v. Elec. Auto-Lite Co.,*
    396 U.S. 375, 396 (1970)...............................................................................24

*Moose Lodge No. 107 v. Irvis,*
    407 U.S. 163 (1972).........................................................................................3

*Mostaed v. Crawford,*
    2012 WL 3947978 (E.D. Va. Sept. 10, 2012) ...............................................24

*Murray v. GMAC Mortg. Corp.,*
    434 F.3d 948 (7th Cir. 2006) ...........................................................................6

*New York News, Inc. v. Kheel,*
    972 F.2d 482 (2d Cir. 1992) .....................................................................16, 17

*Olson v. Brown*,
    594 F.3d 577 (7th Cir. 2010) ............................................................................3

*Piggee v. Carl Sandburg Coll.*,
    464 F.3d 667 (7th Cir. 2006) ..........................................................................20

*Reich v. ABC/York-Estes Corp.*,
    64 F.3d 316 (7th Cir. 1995) .........................................................................7, 10

*Robert F. Booth Trust v. Crowley*,
    687 F.3d 314 (7th Cir. 2012) ....................................................................7, 9, 10

*Robinson v. McNeil Consumer Healthcare*,
    615 F.3d 861 (7th Cir. 2010) ............................................................................3

*Rothstein v. Am. Int'l Group., Inc.*,
    837 F.3d 195 (2d Cir. 2016) ...........................................................................10

*Sierakowski v. Ryan*,
    223 F.3d 440 (7th Cir. 2000) ..........................................................................20

*Simer v. Rios*,
    661 F.2d 655 (7th Cir. 1981) .........................................................................8, 9

*Singleton v. Northfield Ins. Co.*,
    826 So.2d 55 (La. Ct. App. 2002) ...................................................................11

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ....................................................................................11

*Solid Waste Agency of N. Cook County v. U.S. Army Corps of Engineers*,
    101 F.3d 503 (7th Cir. 1996) ............................................................................6

*Thorogood v. Sears, Roebuck & Co.*,
    627 F.3d 289 (7th Cir. 2010) ..........................................................................15

*In re Trulia, Inc. Stockholder Litigation*,
    129 A.3d 884 (Del. Ch. 2016) ...........................................................22, 23, 24

*In re Walgreen Co. Stockholder Litigation*,
    832 F.3d 718 (7th Cir. 2016) ...................................1, 4, 8, 19, 20, 21, 22, 24

*Wendt v. Fischer*,
    154 N.E. 303 (N.Y. 1926) ...................................................................11

*Wis. Educ. Ass'n Council v. Walker*,
    705 F.3d 640 (7th Cir. 2013) ..............................................................7

*Wong v. Accretive Health Inc.*,
    773 F.3d 859 (7th Cir. 2014) ........................................................24, 25

<u>Rules and Statutes</u>

15 U.S.C. § 78u-4(a)(6) ..................................................................24, 25

15 U.S.C. § 78u-4(c)(1) ........................................................................25

28 U.S.C. § 1367 .............................................................................12, 13

Fed. R. Civ. Proc. 8 ..............................................................................18

Fed. R. Civ. Proc. 11 ............................................................................16

Fed. R. Civ. Proc. 24 ....................................................1, 5, 15, 16, 17

Cir. R. 50 .........................................................................................1, 5

<u>Other Authorities</u>

S. Rep. 104-98, 1995 U.S.C.C.A.N. 679...........................................24

H.R. Conf. Rep. No. 104-369 (1995) ................................................25

**Introduction**

Appellees make little effort to address the district court's fundamental errors that require reversal and remand: its ruling that appellant Frank's motion to intervene was moot and mistaken premise that Frank was seeking an injunction prohibiting appellees' counsel from filing suit without court approval. The law is clear that Frank's motion was not moot. *See* Section I. And the record is clear that the district court's understanding of the injunctive relief Frank sought was wrong and that it failed to provide reasons for its ruling as required by Circuit Rule 50. *See* Section II.

Appellees try to brush these errors under the rug and go straight to the merits of Frank's requested relief. But even if this Court also looks past the errors and analyzes the substance of Frank's motion to intervene in the first instance, Frank meets the Rule 24 requirements—particularly viewing his motion and complaint in the light most favorable to him. And he has standing to seek an injunction preventing appellee's counsel from obtaining attorneys' fees after settling strike suits for mootness fees without court approval as a result of their breach of the fiduciary duty they owed to him. *See* Sections II-IV. While the merits of Frank's request for an injunction should be briefed before the district court in the first instance, there is no legal impediment that forecloses his request. *See* Section V.

Tellingly, appellees hardly rebut their involvement in the "racket" Frank described in his opening brief. However, neither this Circuit's decision in *In re Walgreen Co. Stockholder Litigation*, 832 F.3d 718 (7th Cir. 2016), nor the PSLRA, nor mudslinging

at Frank justifies or excuses their abusive leveraging of the class action device and their putative clients' claims for personal enrichment. *See* Section VI.

## Argument

I.   **Appellees misrepresent the record and standard of review in an attempt to portray Frank's prayer for injunctive relief as "moot."**

Appellees falsely assert that Frank's motion was denied "based on factual representation by Frank that the basis for his Motion to Intervene was moot." PB16, *see also* PB3, PB6, PB30-31.[1] No such factual representation exists. As in their motion to dismiss, appellees quote Frank's counsel responding to the district court's question of how the cases should proceed below, after the court had made clear that it intended to deny his motion to intervene as moot and after the court indicated that Frank had "made [his] record," A25, for appeal: "those could be dismissed." A36. This statement could not possibly constitute a "factual representation" of mootness given that Frank specifically disputed appellees' self-serving conclusion of mootness in two written fillings and before the court. A249 ("Frank strongly disagrees with the Berg Motion's suggestion that it moots Frank's renewed motion to intervene"); A256 ("Berg's initial motion to declare my action moot entirely ignored any arguments about my right to an injunction."); A10 (appellees' motion to disclaim "assumes the conclusion that it moots our motion to intervene.").

---

[1] OB, PB, and A refer to Frank's Opening Brief, Plaintiffs-Appellees' Answering Brief, and the Appendix respectively.

But assuming *arguendo* that appellees' distorted description of Frank's counsel's statement were accurate, appellees fail to grapple with the standard for judicial admission: An out-of-context verbal statement during informal colloquy with the court does not override written pleadings in the absence of a "deliberate, clear, and unambiguous" judicial admission. *Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 872 (7th Cir. 2010); *see* OB42, OB45. And they address *none* of the waiver cases Frank relies upon: *McNeil*, *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163 (1972), or *McCaskill v. SCI Mgt. Corp.*, 298 F.3d 677 (7th Cir. 2002).

Instead, appellees wrongly assert that the district court's ruling on Frank's motion to intervene is reviewed for abuse of discretion. PB16. Appellees' purported legal authority for this proposition is a decision affirming a district court's mixed factual and legal finding of laches. *Cook v. City of Chicago*, 192 F.3d 693, 694 (7th Cir. 1999). The case has no bearing on the standard of review here. Mootness—unlike laches—is a question of law that must be reviewed *de novo*. *Olson v. Brown*, 594 F.3d 577, 580 (7th Cir. 2010).

The district court's conclusion of mootness must be reversed because Frank requested both disgorgement of fees *and* a "permanent injunction prohibiting Settling Counsel from accepting payment for dismissal of class action complaints filed under the Exchange Act without first obtaining court adjudication of their entitlement to any requested fee award." A200. The second form of relief has not been provided. Appellees' belated relinquishment of fees does not relieve Frank of the ongoing harm he pleaded. Frank owns shares in merging companies targeted by the same plaintiffs and counsel engaged in the same "racket" as in the Akorn transaction. *See* A197-98.

Alternatively, if appellees' arguments regarding disclaimer prevail, this controversy satisfies an exception to the mootness doctrine since it is capable of repetition yet evading review. OB24-25. Appellees repeatedly quote the district court's subsequent decision denying intervention with respect to the plaintiffs who seek to retain attorneys' fees.[2] The order proves too much, because it shows that if appellees' arguments are adopted, they make such strike suits impossible to review. The order finds Frank allegedly has no interest to intervene in *this* case even where plaintiffs successfully extracted $325,000 for disclosures even less substantial than the ones in *Walgreen*. Under this view, Frank supposedly will never have requisite interest in intervention.

As for "capable of repetition," appellees do not deny that they've dismissed strike suits for alleged mootness involving several companies where Frank is or was a shareholder. OB25 n.4. Given that appellees' counsel files suit with respect to the vast majority of mergers of publicly-traded companies—122 suits just in the first half of 2018 (A267-72)—further repetition is assured. Their suggestion that Frank could obtain information about their future suits through the burdensome and likely incomplete process of scouring "news alerts for SEC filings, court filings, and press releases" is both entirely unreliable and telling with respect to their intentions. PB17.

---

[2] The district court has invited Frank to file an *amicus* brief concerning the materiality of the underlying disclosure.

## II.    Frank met the requirements for intervention under Rule 24.

Appellees put the cart before the horse with their substantive Rule 24 argument. Appellees sneer that Frank discussed Rule 24 only once in his opening brief, PB3, but this is because the district court did not deny his motion under Rule 24, but instead ruled based on its misapprehension that Frank's underlying complaint was "moot." A41-43. Frank unsurprisingly spent little time in his brief rebutting conclusions the district court never reached.[3]

It is surprising, however, that appellees fail to address the district court's mistaken understanding of the relief actually sought by Frank and, to the extent the court rejected the motion to intervene on the merits, its failure to satisfy Circuit Rule 50 by giving its reasons. *See* OB32. So while Frank responds to the substance of appellees' Rule 24 analysis here, there is no reason the Court need reach this issue. The district court either did not conduct this analysis at all because it denied Frank's motion as moot, or it failed to provide the requisite reasons for its ruling and that alone requires remand. *See* OB33.

---

[3] Likewise, appellees' contention that Frank "waived" his argument for permissive intervention is unfounded. PB18 n.11. Frank moved for intervention as a matter of right *and* permissive intervention. A174, A221. The district court did not reach either argument with respect to appellees, and so Frank's opening brief did not argue against hypothetical findings never made. Frank reserves the right to argue for permissive intervention on remand.

**A.**    Frank intervenes to vindicate his own interests and remedy the breach of fiduciary duty by appellees' counsel.

Appellees insist that Frank brings a derivative claim on behalf of Akorn, PB19, but this is manifestly false. Frank did not plead that any attorneys or Akorn officers breached their duty to the corporation; nor does he assert claims under Rule 23.1. Instead, Frank contends—and appellees agree—that counsel undertook a fiduciary duty to putative class members when the they filed the complaints. Frank plausibly pleaded that appellees' counsel breached their fiduciary duty to him. *See* A196-97.

First, the claim Frank pleaded is direct. Frank does not allege that anyone breached a duty to the corporation in capitulating to appellees' mootness fee racket. Frank has standing for his claims as a putative class member—not by virtue of being a shareholder. While it is true that Frank was harmed through the loss suffered to his fractional ownership in Akorn, this mechanism does not negate the individual nature of the claim. By analogy, an individual's suit to enjoin a nearby polluter does not become a derivative claim, even if other parties appreciate most benefit from the injunction. *Cf. Solid Waste Agency of N. Cook County v. U.S. Army Corps of Engineers*, 101 F.3d 503, 509 (7th Cir. 1996).

Appellees do not counter the legal precedent holding that the fiduciary duty not only prevents appellees and their counsel from impairing the claims in their underlying suits, it also forbids "leverag[ing]" "the class device" for the representatives' own benefit. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006); OB37-39.

Appellees' counsel breached this duty, so Frank has an individual interest in remedying their ongoing breaches in other cases in which they also owe him this duty.[4]

Second, the requirement that intervenors have an interest in "the subject of the action" does not imply intervenors must assert the same claims. *See* PB19. Instead, "[t]hat interest must be unique to the proposed intervenor." *Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 658 (7th Cir. 2013). Intervention would be unnecessary if the interest was identical. For example, this Court found that exotic dancers could intervene in an agency enforcement action against an adult entertainment company even though they could not possibly be defendants to the action. *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 323 (7th Cir. 1995). The interest need only be "direct, significant and legally protectable," not identical, and the exotic dancers had such interest in "leverage in negotiating their employment conditions" as independent contractors. *Id.* Here, Frank pleads a direct and legally protectable breach of the fiduciary duty owed to him, and the resolution of his claims turns on the same facts as the original lawsuit: specifically, whether Akorn's proxy statements contained material omissions that would render them "false and misleading" under the Exchange Act.

Appellees' citation to *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982) is inapposite. In *Meridian*, the proposed intervenors—brothers who inherited ownership but not a partnership interest in a joint venture—had "no

---

[4] Because Akorn was not owed a fiduciary duty from appellees, it does not adequately represent Frank's interests, as appellees asserted in passing. PB19. It is reversible error to deny intervention based on appellees' preposterous argument that Frank's interests are represented by the settling parties. *See Robert F. Booth Trust v. Crowley*, 687 F.3d 314, 318 (7th Cir. 2012).

legal interest in the continuation or dissolution of the joint venture agreement," but were "entitled only to the share of the profits." *Id.* In contrast, Frank has a protectable interest by virtue of the fiduciary duty owed to him.

Frank has an interest in curtailing the breach of fiduciary duty by attorneys purporting to represent him, and contrary to appellees (and the district court's subsequent order), the facts of Frank's complaint and the law governing it extensively overlap with the underlying suit. The propriety of the mootness fee turns entirely on the materiality of the proxy statements' alleged material omissions and supplemental disclosures that appellees use as an excuse to obtain fees. To put it another way, the subject of a class action is *closely related* to whether the same "class action … seeks only worthless benefits for the class [and] should be dismissed out of hand." *Walgreen*, 832 F.3d at 724.

## B.  Frank's interest is entirely impaired if he cannot intervene against appellees and their counsel.

Appellees next argue that Frank's interest could not possibly be impaired because he has not been forced to release any claims. But representatives may breach their duties without waiving the claims of absent class members. *See* OB39. As a shareholder of many merging companies, Frank has an interest in curtailing counsel's breach of fiduciary duties to him and in enforcing *Walgreen*'s directive that selfish strike suits be dismissed out of hand. Without intervention, Frank cannot seek a permanent injunction to protect his interests, and this impairs his rights, even if the district court were to ultimately conclude such injunction would not be warranted. In *Simer v. Rios*, as

here, "[a]lthough the judgment did not bind absent class members, the practical effect of the settlement … may have been contrary to the interests of putative class members." 661 F.2d 655, 666-67 (7th Cir. 1981). Moreover, "even if the judge had concluded that the plaintiffs have the better of their dispute with Frank, still the judge should have granted his motion to intervene." *Crowley*, 687 F.3d at 318.

### C. Frank was not required to intervene before his interests were ripe.

Finally, appellees argue that Frank's motion should be deemed untimely because Frank allegedly should have filed it "the very same day he purchased his shares" on June 20, 2017, instead of after the parties filed their mootness fee stipulation on September 15, 2017. Without the benefit of a factual record on the circumstances of Frank's alleged 90-day delay, appellees suggest this Court should find Frank's motion to intervene untimely. It cannot.

In fact, the "delay" was caused by the need for ripeness, as appellees fully understand when they're not trying to manufacture an alternative ground for denial of Frank's motion. Appellees elsewhere assert that "[n]one of the Disclaimed Fee Plaintiffs' or their counsel ever had possession or control over the Fee in any event, so Frank's proposed claims were never ripe." PB32 n.24. While Frank disagrees that possession of the cash was necessary for ripeness, he agrees that his complaint was not ripe when it remained entirely speculative whether appellees would successfully execute their scheme.

Appellees' timeliness argument has no support in law; not one case they cited suggests absent class members must intervene as soon as they become aware of the

lawsuit *just in case* their putative attorneys compromise their interests and *just in case* defendant capitulates to extortion. *See Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 572 (7th Cir. 2009) (vacating denial of intervention where "there was nothing to indicate that the [plaintiff] was planning to throw the case—until he did so"); *see also Rothstein v. Am. Int'l Group., Inc.*, 837 F.3d 195, 205 (2d Cir. 2016) (observing "troubling consequences" of requiring premature interventions by nonnamed class members). "Rather, we determine timeliness from the time the potential intervenors learn that their interest might be impaired." *ABC/York-Estes*, 64 F.3d at 321 (reversing denial of intervention nineteen months after intervenors learned of action where they had "no reason to suspect" employer would fail to defend their interests). The relevant interval here is just *three days*. *See* Dkt. 57.

In *Crowley*, Frank moved to intervene when he objected, almost a year after the suit was filed, long after the suit was disclosed in SEC filings. 687 F.3d at 318. The Seventh Circuit did not find Frank's motion untimely for failing to predict that counsel would reach a selfish settlement. As in this case, Frank was not bound by any settlement in *Crowley*—the district court rejected the proposed settlement so there was no settlement pending at the time of the appeal, but this Court rejected the argument that this mooted Frank's intervention. *Id.*

All four requirements for intervention as a matter of right exist in this case.

**III.     Appellees' Article III jurisdiction and standing arguments are not grounded in fact or law.**

**A.     Frank possesses standing to pursue claims against appellees' counsel.**

Appellees' Article III standing argument simply elaborates on their refusal to understand that Frank moves to intervene in order to remedy repeated and ongoing breaches of fiduciary duty by attorneys who purported to represent his individual interests. PB23-35. Therefore, the requirements for filing a derivative action on behalf of a Louisiana corporation simply do not apply; Frank does not bring such an action.

Frank seeks redress for a breach of fiduciary duty to him directly. Appellees do not deny the existence of the duty, and for good reason; it's well established. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949); *Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002). And "[t]here is no dispute that the Constitution permits [extending] federal court jurisdiction" in a case alleging violation of an attorney's professional duty to his client. *Gunn v. Minton*, 568 U.S. 251, 256 (2013). The breach of fiduciary duties gives rise to a legally-protectable interest.[5] That a fiduciary's breach "was unaccompanied by damage," is "no sufficient answer by a trustee forgetful of his duty." *Wendt v. Fischer*, 154 N.E. 303, 304 (N.Y. 1926) (Cardozo, J.); *see Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1551 (2016) (Thomas, J., concurring) (there doesn't need to be *any* injury "beyond the violation of his private legal right"); *Hendry v. Pelland*, 73 F.3d 397, 402 (D.C. Cir. 1996) ("[C]lients suing their attorney for breach of the fiduciary duty

_____

[5] Absentees possess a cognizable legal interest in the faithful discharge of their counsel's fiduciary duty to them under relevant state law. *Byer Clinic & Chiropractic, Ltd. v. Kapraun*, 48 N.E.3d 244, 249 (Ill. Ct. App. 2016); *Singleton v. Northfield Ins. Co.*, 826 So.2d 55 (La. Ct. App. 2002).

of loyalty and seeking disgorgement of legal fees as their sole remedy need prove only that their attorney breached that duty, not that the breach caused them injury.").

Here, Frank does suffer harm when appellees continue their mootness fee racket, through which they use the claims of Frank and other members of a shareholder class to unjustly enrich themselves at the expense of those shareholders, which undoubtedly will include Frank. OB13; A267-72. As relief for that breach, Frank seeks an injunction that will protect him against appellees' counsel's continuation of their racket.

Finally, appellees argue that Article III standing does not exist because Frank supposedly has not alleged a "substantial risk that the harm will occur." PB26 (cleaned up). This is simply untrue. Frank's proposed complaint itself noted that plaintiff-appellee Berg alone filed twenty-seven similar strike suits against other merging companies, including two where Frank was a shareholder. A197-98. Between them, appellees' counsel has filed suits against at least fifteen other companies where Frank was a shareholder. A198. The repetition has already come to pass since Frank's complaint was drafted. Counsel for appellees here extracted mootness fees from at least six other companies where Frank is a shareholder, and appellees do not deny their racket was manifestly successful in these cases. OB25 n.4. Given that appellees' counsel continues to file dozens of suits every month (A267-72), further repetition is assured. There is nothing "purely speculative" about counsel's systematic filing of strike suits, only to dismiss them in order to seek mootness fees. PB26. *See further* Section V.C.

**B.    The district court can properly exercise jurisdiction over Frank's claims.**

Appellees further raise an assortment of undeveloped theories as to why there is no Article III jurisdiction. PB4-5. Appellees first argue that the district court could not exercise supplemental jurisdiction under 28 U.S.C. § 1367 over "the state law claims for 'Unjust Enrichment' and 'Inequitable Conduct'" that Frank asserted in his complaint in intervention. PB4. They assert that such claims are not "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367. PB4. On its face, appellees' argument that the district court lacked jurisdiction is absurd. Consistent with the district court's retention of jurisdiction over fees, Frank asked the court to exercise its "authority to order sanctions and other equitable remedies pertaining to related misconduct, including Settling Counsel's breach of their fiduciary duty in exacting mootness fees for supplemental disclosures in sham litigation which adds no value to the putative class of shareholders." A199 ¶ 88. District courts have broad inherent authority over such matters that arise in the course of proceedings. *See* Section V.A. And as discussed in Section II.A, Frank's complaint involves the same facts and law as the underlying suit, with the materiality of the proxy statements' alleged material omissions and supplemental disclosures central to the propriety of appellee counsel's breach of duty and whether the district court should enjoin their ongoing mootness fee racket. As such, Frank's complaint and the underlying suit are essentially part of the same case or controversy. *See ITT Commercial Finance Corp. v. Unlimited Auto., Inc.*, 814 F. Supp. 664, 669 (N.D. Ill. 1992) (claims seeking declarations against separate defendants comprised

"same case or controversy" under § 1367 as breach of contract claims against other defendants).

With respect to appellees' other jurisdictional arguments, Frank addresses appellees' unfounded contention that he somehow waived or failed to preserve his appellate rights in Sections I and IV. In Section I, he also counters appellees' argument that their disclaimer of the agreed fee mooted his intervention motion, as he did at length in his opening brief, OB41-45, because he seeks additional relief to remedy appellees' counsel's ongoing and repeated breach of their fiduciary duties. And in Section III.A, as well as in his opening brief, *e.g.*, OB6-7, Frank discusses his allegations and the supporting evidence documenting the ongoing mootness fee racket that appellees and their counsel engage in. In short, appellees' poorly supported argument that jurisdiction is lacking must fail.

**IV.    Frank repeatedly reserved his right to appeal the district court's denial.**

As Frank described in his opening brief, OB41-46, and above, an informal remark before the district court cannot erase Frank's repeated written and oral reservation of his right to appeal, which the district court previously acknowledged. Appellees now also contend that Frank's assent to allow local counsel to withdraw somehow "underscores" their contention that Frank waived his argument. PB30. To the contrary, it simply shows Frank's counsel responding to the district court's procedural question "what's the position of the intervenor as to these three cases?" A35.

That Frank displayed professional courtesy by consenting to a routine, procedural withdrawal motion by local counsel has no bearing on whether he believed

the case was ongoing. In fact, Frank also provided consent to counsel's withdrawal in an ongoing case. A39. Such professional courtesy simply has no impact on whether Frank believed the case was ongoing.

## V. Frank seeks injunctive relief that is neither speculative nor beyond the permissible scope of intervention.

The district court erred in finding intervention moot because the court *could* grant Frank's requested relief. *See* OB19-20. And to the extent the district court ruled on the merits, that ruling was based on an erroneous understanding of the relief that Frank sought. *Id.* Perhaps seeking to divert attention from these legal errors, appellees plough forward to the substantive merits of the injunctive relief, wrongly arguing that it is beyond the permissible scope of intervention.

### A. The district court has authority to grant Frank's requested relief.

Appellees' counsel voluntarily appeared before the district court and, accordingly, subjected themselves to the court's jurisdiction and broad inherent authority with respect to supervision over the attorneys who appear before it and abusive litigation practices. *See Boyer v. BNSF Ry. Co.*, 832 F.3d 699, 701-02 (7th Cir. 2016) (collecting cases); *Thorogood v. Sears, Roebuck & Co.*, 627 F.3d 289 (7th Cir. 2010) (All Writs Act permits courts to enjoin vexatious litigation practices). Frank asked the Court to order injunctive relief against appellees' counsel "pursuant to [its] equitable powers and inherent authority." A200.

Indeed, none of the cases cited by appellees forbid intervention for the purpose of asking the Court for relief with respect to attorneys. Instead, courts conduct the standard Rule 24 analysis when ruling on the intervention motions.

Appellees erroneously suggest that Frank seeks relief "only" against the plaintiff appellees. PB31. Frank's proposed complaint requests relief for substantive claims against both plaintiffs and their counsel, and it details the factual basis for those claims. For example, the complaint states: "Frank asserts sanctions and unjust enrichment claims against all Plaintiffs and Settling Counsel for their breach of fiduciary duty to the class." A181 ¶ 11. He further alleged that "[b]y virtue of filing claims on behalf of a class of shareholders, the Plaintiffs and Settling Counsel undertook fiduciary responsibility to those class members" and breached that duty with complaints that "were little more than a vehicle for attorneys' fees." A186 ¶ 38; A196 ¶ 73.

Appellees cite *Julianites Against Shakedown Tactics v. TEJJR*, 2006 WL 8089629, at *7 (S.D. Cal. Dec. 29, 2006), *amended and superseded by Julianites Against Shakedown Tactics v. TEJJR*, 2007 WL 184716 (S.D. Cal. Jan. 5, 2007), and *New York News, Inc. v. Kheel*, 972 F.2d 482 (2d Cir. 1992), as purportedly supporting their argument that intervention to sanction counsel "is not permissible." PB33. But in both cases, the court analyzed the intervention factors and certainly did not create any bright-line rule barring intervention with respect to requests for relief against counsel, as appellees suggest. The proposed intervenors in *TEJJR* were involved in separate litigation with defendants and sought to sanction plaintiffs' counsel for activities outside the scope of the litigation that they alleged "complicated" their settlement efforts. 2006 WL 8089629, at *1. The court denied intervention because doing so "would significantly change the focus and nature

of the litigation" and the applicants failed to meet the intervention factors. *Id.* at *7. In contrast, Frank's intervention would address activity that occurred in the *very litigation* in which he seeks to intervene, that involves a common underlying inquiry, and in which the subject parties owe him a fiduciary duty.

In *Kheel*, the Second Circuit analyzed the Rule 24 intervention standard, and found the applicant in *Kheel* had no legally protectable interest other than a general interest in "protect[ing] the judicial process against abuse" where an attorney signed a pleading with false information. 972 F.2d at 486. The Second Circuit recognized that even nonparties and other "non-participants" in an action could move for sanctions under Rule 11 if they satisfied the intervention requirements of Rule 24. *Id.* at 488 ("the district court properly held that Kheel as a non-party and non-participant in the action could not move for sanctions unless he satisfied the intervention requirements of Rule 24"). Here, class counsel voluntarily took on a fiduciary duty with respect to Frank and all other putative class members when they filed a class action complaint. Unlike the applicant in *Kheel*, Frank can satisfy the intervention requirements of Rule 24. *See supra*.

Appellees are wrong that he was required to take the overly formalistic step of naming appellees' counsel as parties and designating a separate count in his complaint. PB32. As a class member and proposed intervenor, Frank could request the proposed relief, and the court could grant it even in the absence of formalities that otherwise may be required for relief requested from true non-parties to the litigation. Even if the Court were to hold that Frank was required to formally name appellees' counsel as parties with a formal count against them in his complaint, courts "decline to apply Rule 24(c) in a needlessly technical manner in the absence of resulting prejudice." *Gibraltar*

*Mausoleum Corp. v. Cedar Park Cemetery Assoc.*, 1993 WL 135454, at *4 (N.D. Ill. Apr. 29, 1993). Frank's motion and complaint provide sufficient notice of the relief he seeks against appellee's counsel. Accordingly, he "should be permitted to rectify [his motion] by submitting a pleading that sets forth an explicit claim and the relief sought." *Id.*

**B.**     **Appellees' challenge to Frank's ability to obtain equitable relief fails on the merits and is procedurally improper.**

Appellees argue only that Frank cannot meet two of the four factors that a party seeking a permanent injunction must demonstrate—irreparable injury and inadequate remedies available at law. PB33-34. Critically, appellees' argument goes to the merits of the requested relief, not to whether the district court should have granted Frank's motion to intervene. Consistent with the requirements of Rule 8, Frank's intervenor complaint contained a short and plain statement of his claims with plausible factual allegations. The substantive merits of the requested relief were not briefed or addressed by the district court and, because Frank plausibly pleaded facts entitling him to injunctive relief, it is legal error to judge the merits at this stage, before there has been any discovery or motion to dismiss. *See* OB24.

If the Court does reach the merits, appellees make only a two-sentence superficial argument claiming Frank cannot show irreparable injury. As such, this argument—and any argument that Frank cannot meet factors (3) and (4), which appellees fail to address at all—is forfeited. With respect to the second factor, appellees are flat wrong that Frank failed to show that the remedies available at law are inadequate. In his proposed complaint in intervention, and largely unrebutted by

appellees, Frank unambiguously showed that appellees and their counsel repeatedly file and almost certainly will continue to file dozens of strike suits. Through these suits, they extract mootness fees that harm Frank and other putative future class members. *See* OB25-26 (citing the record). Frank's showing is particularly adequate because the court "must accept as true the non-conclusory allegations of the motion and cross-complaint." *Lake Investors Dev. Group v. Egidi Dev. Group*, 715 F.2d 1256, 1258 (7th Cir. 1983). And, in any event, "[a] motion to intervene as a matter of right, moreover, should not be dismissed unless it appears to a certainty that the intervenor is not entitled to relief under any set of facts which could be proved under the complaint." *Id.* Appellees cannot rebut this showing simply by noting that publicly traded companies must disclose strike suits in which they may have to pay attorneys' fees in public SEC filings. PB34. It is entirely unfair and impracticable for Frank and other class members to scrutinize the SEC filings of every company in which they owns shares for the purpose of possibly intervening to protect their interests against parties that should be representing them in a fiduciary capacity.

C. **Frank's request for injunctive relief is based on the record set forth in his proposed complaint detailing the "racket" counsel have developed post-*Walgreen*.**

Appellees further claim that the requested relief is unavailable because it is based on "false accusations and speculation," when, in fact, they fail to rebut any of the underlying allegations as "demonstrably false." PB34. While the district court was obligated to view Frank's allegations in the light most favorable to him, even under appellees' version of events, they don't dispute that the supplemental disclosures failed

to materially impact the shareholder vote or that they filed the suit with the intent to benefit themselves through Akorn's payment of their attorneys' fees. *See id.* They admit that the stipulations of dismissal they filed expressly stated that they intended to petition the court for attorneys' fees if they could not negotiate their claim to fees with the defendants. *Id.* That they assert that the amount had not been negotiated and Akorn had not agreed not to challenge fees at the time Akorn disseminated the supplemental disclosures or the parties filed the stipulations doesn't change the clear message that appellees intended to demand fees and would impose additional litigation costs on Akorn if it refused to pay. Appellees' actions fit well within the unscrupulous conduct described by Frank in his complaint and declared a "racket" that "must end" in *Walgreen*. 832 F.3d at 724.

Likewise, appellees' argument that Frank's claim of future harm is speculative exemplifies rather than rebuts the need for intervention. Otherwise, Frank lacks an adequate remedy. As Frank alleged in his proposed complaint, appellees have a practice and pattern of filing and then stipulating to the dismissal of meritless strike suits and then enriching themselves by negotiating "mootness fees." *See* OB7 (citing record). Appellees' continuation of this abusive practice is not speculative; appellees do not deny that, collectively, they have filed dozens of strike suits without any intention of benefiting the class or anyone other than themselves, nor do they commit to ending this "racket." In any future suit, appellees can make the same argument they made in this litigation to avoid review of their abuse of the judicial system and disclaim a fee in any case in which the court appears sympathetic to Frank's argument. *See* OB27.

Appellees' cases don't support their argument that Frank's premise for injunctive relief is based on speculation. PB35. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 741 (7th Cir. 2014), and *Laurens v. Volvo Cars of North America*, 2016 WL 5944896, at *2 (N.D. Ill. Oct. 13, 2017), involved unfair trade allegations against retailers such that the plaintiffs, once they discovered the unfair practices, were "certainly not in danger of once again being duped." *See also Piggee v. Carl Sandburg Coll.*, 464 F.3d 667, 673 (7th Cir. 2006) (instructor unlikely to experience future prior restraint of speech by college that fired her); *Sierakowski v. Ryan*, 223 F.3d 440, 445 (7th Cir. 2000) ("record provide[d] no reason to believe" challenged conduct likely to recur). Here, Frank cannot simply avoid Akorn stock to avoid suffering the same harm appellees caused to him here. Given the high volume of strike suits that appellees and their counsel file, Frank—with 5-10% of his investment portfolio engaged in arbitrage of pending mergers (A257)—can hardly avoid becoming prey to their scheme in the future.

### D.    There is no conflict between the relief Frank seeks and the Rules of Professional Conduct

Appellees' argument that there is a conflict between the injunction Frank seeks and the Illinois Rules of Professional Conduct is nonsensical. PB36. The rules do not suggest any limitation on courts entering an injunction prohibiting appellees' counsel from accepting mootness fees without court approval. A200. Even if the cited rule applied with respect to court orders—and it doesn't—the injunction places no restriction on counsel's autonomy or a potential client's freedom to choose a lawyer. It simply requires an additional check on the fees paid to the attorney in the course of the

litigation to prevent abuse of the class-action system at the expense of absent class members.

**VI.    Appellees' other arguments provide no support for the legality of their racket, which is unauthorized by the Exchange Act and contravenes *Walgreen*.**

Appellees lastly assert a hodgepodge of arguments: (1) Frank supposedly rejects corporate transparency, (2) their racket is actually endorsed by *Walgreen*, and (3) the PSLRA does not apply because the district court exercised no supervision in awarding attorneys' fees. Each of these arguments is false.

With respect to (1), appellees offer no support for what they claim are Frank's "personal views." PB38-39. In any event, these characterizations constitute irrelevant *ad hominem*.

**A.      *Walgreen* did not import all idiosyncrasies of Delaware corporation law into Seventh Circuit controversies involving alleged Exchange Act violations by a Louisiana corporation.**

Appellees incorrectly read *Walgreen*, which adopted the "clearer [plainly material] standard for the approval of such settlements," 832 F.3d at 725, to somehow endorse their mootness racket. While *Walgreen* relied on the "plainly material" standard for supplemental disclosures announced in *In re Trulia, Inc. Stockholder Litigation*, 129 A.3d 884, 894 (Del. Ch. 2016), appellees cannot cite any words suggesting that *Walgreen* imported the procedural and substantive Delaware corporation law of mootness fees into Exchange Act litigation.

Appellees chose to file complaints under the Exchange Act in federal courts, so should follow federal law, which prohibits catalyst fees. *See Buckhannon Bd. & Care*

*Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001) (repudiating theory that obtaining voluntary concessions after inception of case makes plaintiff "prevailing party"). The substitution of Delaware law and procedure makes no sense, particularly where Akorn is a Louisiana corporation.

And appellees don't even hew to *Trulia*. Instead, they pick and choose which standards to apply. For example, appellees entirely disregard the shareholder protections mandatory under Delaware law. Privately-negotiated mootness fees can only be tolerated "with the caveat that notice must be provided to the stockholders to protect against 'the risk of buy off' of plaintiffs' counsel." *Trulia*, 129 A.3d at 898. Notice of mootness fees is required so that shareholders like Frank *can object to the payment*:

> Therefore, should the board elect to pay a reasonable fee for some reason in the context of a moot shareholders' claim, it is necessary that the court be informed and that notice to the class of such payment be made and an opportunity to be heard afforded. The purpose of the hearing would be to afford the class an opportunity to show that the case really is not moot but that the proposed payment to counsel is the only motivation for the dismissal on that ground.

*In re Adv. Mammography Sys., Inc. Shareholders Litig.*, 1996 WL 633409, at *1 (Del. Ch. Oct. 30, 1996) (cited by *Trulia*, 129 A.3d at 898).

No such notice has ever been provided to Akorn shareholders. No SEC filing or press release announced the settlement of mootness fees in this case. Appellees' counsel have moved their racket into federal courts precisely to evade Delaware's stringent supervision. *See* OB6. Yet having completely sidestepped the mootness fee notice requirement, appellees now insist that *Trulia* robs Frank of any venue to argue a claim *Trulia* expressly allows: that the proposed payment to counsel is the only motivation for

their racket. PB38. Frank allegedly could have only filed a separate derivative action against Akorn, which is supposedly foreclosed by Louisiana law. PB24. In other words, appellees contend that their extraction of fees under federal securities law is unreviewable because this Court favorably cited an opinion that also described a process for seeking the review of mootness fees under Delaware state law, which has no parallel in applicable Louisiana law! Kafka would whistle respectfully.

**B.     The PSLRA was intended to curtail lawyer-driven rackets that harm shareholders.**

Securities litigants and courts have found it crystal clear that § 78u-4(a)(6) forbids payment for mere disclosure. *See Mostaed v. Crawford,* 2012 WL 3947978, at *7 (E.D. Va. Sept. 10, 2012) ("The parties agree that, under federal law, the plaintiffs must be denied attorneys' fees because the [PSLRA] ... prevent[s] the award of attorneys' fees except where counsel's efforts have led to monetary relief that is 'actually paid to the class' of claimants."); *see also Masters v. Wilhelmina,* 473 F.3d 423, 438 (2nd Cir. 2007) ("PSLRA would not allow for the computation of fees on the basis of such non-damages items as discounts or coupons received in settlement.").

The statute cannot be read any other way. Because the amount appellees recovered for the class is zero, any reasonable percentage likewise ought to be $0.

Appellees' contrary theory rests on citations predating *Trulia, Walgreen,* and even the PSLRA itself, which lack persuasive force. *Compare Mills v. Elec. Auto-Lite Co.,* 396 U.S. 375, 396 (1970) (awarding lodestar due to "the stress placed by Congress on the importance of fair and informed corporate suffrage") *with* S. Rep. 104-98, 12, 1995

U.S.C.C.A.N. 679, 691 ("As a result of [lodestar] methodology, attorney's fees have exceeded 50% or more of the settlement awarded to the class. The Committee limits the award of attorney's fees and costs to a reasonable percentage of the amount of recovery awarded to the class.").

The PSLRA was passed, 25 years after *Mills*, "to curtail the champertous vice of 'lawyer-driven' securities litigation." *City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*, 844 F. Supp. 2d 498, 500 (S.D.N.Y. 2012) (Rakoff, J.); *see also Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (citing House and Senate Reports' concern regarding various "abusive practices").[6] Even if the mootness fees paid in this case were not governed by § 78u-4(a)(6) because they were not "awarded" by the lower court, that subsection still informs class counsel's breach of duty. Using a process of dismissal and behind-closed-doors fee negotiation, appellees sought to evade not only *Walgreen* but also the PSLRA itself, neither of which would have permitted class counsel to reach the end result they desired through the ordinary process of settlement. Through their dismiss-and-negotiate-private-fees tactic, appellees also end-ran the PSLRA subsection requiring, *upon final adjudication*, mandatory review of their filings for compliance with Rule 11. *See* 15 U.S.C. § 78u-4(c)(1).

Neither the disputed facts nor the law demonstrate that appellees' counsel could be entitled to attorneys' fees. Much less have appellees shown that Frank's well-pleaded intervention should be denied.

---

[6] Appellees' citation to the House Report (H.R. Conf. Rep. No. 104-369 (1995)) offers them no aid. That passage suggests a lodestar-based award is permissible only if it also constitutes a reasonable percentage of amount awarded to the class.

**Conclusion**

The Court should reverse and remand the district court's finding of mootness. Additionally, the Court should affirm that absent class members may move to intervene to challenge a "mootness fee" request and to prevent class counsel from flouting *Walgreen*, and that appropriately tailored injunctive relief is a prospective remedy.

Dated: November 2, 2018    Respectfully submitted,

            */s/ Anna St. John*
            Anna St. John
            Melissa A. Holyoak
            COMPETITIVE ENTERPRISE
              CENTER FOR CLASS ACTION FAIRNESS
            1310 L Street NW, 7th Floor
            Washington, D.C. 20005
            (917) 327-2392
            Email: anna.stjohn@cei.org
            *Attorneys for Appellant Theodore H. Frank*

**Certificate of Compliance with Fed. R. App. 32(a)(7)(C)**

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32 because excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 6,891 words.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 12-point Palatino font.

Executed on November 2, 2018.

*/s/ Anna St. John*
Anna St. John

**Proof of Service**

I hereby certify that on November 2, 2018, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Seventh Circuit using the CM/ECF system, thereby effecting service on counsel of record who are registered for electronic filing under Cir. R. 25(a).

Executed on November 2, 2018.

/s/ *Anna St. John*
Anna St. John